**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Malcolm Edward BRIDWELL,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gregory G. SCHWAB,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Susan Anita BOYD, Defendant-Appellant.**

**Nos. 77-1310, 77-1320 and 77-1430.**

United States Court of Appeals,
Tenth Circuit.

Sept. 11, 1978.

C. Merle Gile, Oklahoma City, Okl. (D. C. Thomas, Oklahoma City, Okl., on brief), for defendant-appellant Bridwell.

William P. Johnson, Denver, Colo., for defendant-appellant Schwab.

George Miskovsky, Jr., Miskovsky, Sullivan & Miskovsky, Oklahoma City, Okl. (John Paul Johnson, Oklahoma City, Okl., with him on brief), for defendant-appellant Boyd.

John E. Green, Asst. U. S. Atty., Oklahoma City, Okl. (Larry D. Patton, U. S. Atty., Oklahoma City, Okl., on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and LEWIS and DOYLE, Circuit Judges.

LEWIS, Circuit Judge.

In this consolidated criminal case, defendants appeal from judgments of conviction entered on jury verdicts of guilty. Defendants were indicted in the Western District of Oklahoma for conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846. In addition to the one conspiracy count, defendant Bridwell was indicted on 17 counts of distributing controlled substances (*Id.* § 841(a)(1)), and 13 counts of failing to maintain accurate records of dispensation of controlled substances. *Id.* § 842(a)(5). As stated above, the jury returned verdicts of guilty as to all defendants on all charges.

The basis for the conspiracy and substantive charges was a scheme initiated by Malcolm Bridwell, a physician, to sell various drugs illegally. Viewing the evidence in a light most favorable to the government, as we must, the testimony indicated that the scheme began with Bridwell writing prescriptions for a co-conspirator who would have them filled and then resell the drugs

for profit. When local pharmacists became reluctant to fill the numerous prescriptions, Bridwell began ordering the drugs direct from the manufacturers and again reselling them for profit largely through one main co-conspirator. This co-conspirator, Roger Battershell, was granted immunity from prosecution and testified that he repeatedly sold the drugs to defendant Schwab who apparently received the purchase money from his cousin—defendant Boyd. After the above arrangement was in existence for about a year, federal and state narcotics agents became suspicious of Bridwell and obtained a warrant to inspect his records. The inspection showed that Bridwell had ordered about 342,000 dosage units of various drugs, of which almost 300,000 were unaccounted for.

On appeal defendants raise numerous issues, some jointly and some individually. Bridwell first asserts that his privilege against self-incrimination was violated. The first aspect of this argument relates to questioning of Bridwell in his office during the audit of his records. The audit was in progress most of the day and while it was going on Bridwell was seeing patients and performing, as much as possible, his normal activities. He complains now because he was not given the *Miranda* warnings prior to questioning and because certain inculpatory answers were admitted at trial.

■■■ We think it quite clear there was no error on this point. It is well settled that the *Miranda* warnings are required only when the suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694. The Supreme Court has elaborated on this requirement in *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (per curiam) and *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1. *Beckwith* is particularly relevant here because Bridwell argues he was the "focus of investigation" and was under "mental restraint," thereby fulfilling *Miranda's* in-custody requirement. *Beckwith* rejected both these arguments. 425

U.S. at 345, 96 S.Ct. 1612. In this case Bridwell was questioned in his own office, was not under arrest, and no other indicia of coercion are apparent. *Beckwith v. United States, supra.* Accordingly, *Miranda* warnings were not required and the answers given by defendant were properly admitted at trial.

■■■ Bridwell further argues that his privilege against self-incrimination was violated by testimony of a government agent that Bridwell had refused to sign a waiver of his *Miranda* rights. The testimony was as follows:

Q. Did you give him any other instructions in regard to that piece of paper?

A. Yes, sir, I did.

Q. What?

A. I asked him if he would sign a waiver of his rights.

Q. And what happened?

A. He refused to.

Defendant's counsel immediately objected to the testimony and the objection was sustained. The court instructed the jury to disregard the testimony. After this cautionary instruction the prosecutor continued.

Q. What did you do at that point?

A. At that time I asked Dr. Bridwell if he would like to tell us what he had done with the drugs.

Q. From that time forward did he tell you any more?

A. No, sir, he did not.

We agree that the above questions and answers constituted a clear infringement on defendant's privilege against self-incrimination. *See, e. g., Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91; *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99; *Johnson v. Patterson,* 10 Cir., 475 F.2d 1066, *cert. denied,* 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124. Defendant's refusal to waive his *Miranda* rights and his silence in reliance on these rights may not be used by the prosecutor to support an inference of guilt. *See Doyle v. Ohio, supra,* 426 U.S. at 616–17, 96 S.Ct. 2240. Such

use constitutes an impermissible penalty on the exercise of those rights. *See Johnson v. Patterson, supra,* at 1068.

■ The government concedes error on this point but argues that, in view of the overwhelming evidence against Bridwell, the error was harmless beyond a reasonable doubt. We note that under similar facts, where the reference to defendant's silence was brief and isolated, this and other circuits have accepted this argument. *E. g., United States v. King,* 10 Cir., 485 F.2d 353, 360; *Hayton v. Egeler,* 6 Cir., 555 F.2d 599, 603, *cert. denied,* 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463; *Chapman v. United States,* 5 Cir., 547 F.2d 1240, 1248, *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393; *Jones v. Wyrick,* 8 Cir., 542 F.2d 1013, *cert. denied,* 430 U.S. 956, 97 S.Ct. 1603, 51 L.Ed.2d 807. Although we do not retreat from our concern over the seriousness of the error at trial, a careful review of the record convinces us that the error was indeed harmless beyond a reasonable doubt. Our conclusion is based on the relatively brief reference in the context of a four-day trial, on the fact that the court immediately instructed the jury to disregard the testimony, and on the volume of other incriminating evidence.

■ Defendant Bridwell also claims the prosecutor commented in closing argument on his failure to testify.[1] The district court rejected Bridwell's mistrial motion, stating that the reference was to what defendant's counsel had said, not to any action by Bridwell. We agree. The language used was not "manifestly intended or . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Walton,* 10 Cir., 552 F.2d 1354, 1362, *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277.[2]

■ Switching to another aspect of this prosecution, Bridwell argues the evidence seized in the inspection of his office should have been suppressed because the administrative search warrant was invalid. The alleged invalidity is premised on the fact that the warrant was issued to, and served by, a state narcotics agent who was not "a person authorized . . . to execute it" under 21 U.S.C. §§ 880(d)(2), 880(b)(2).[3] Defendant's motion to suppress on this ground was never ruled on by the district court, though the court did express the opinion that the motion was untimely under Fed.R.Crim.P. 12(b).[4] That rule provides that motions to suppress evidence must be made pretrial. Rule 12(f) further provides that the failure to make the motion at the proper time constitutes waiver. *See also Mesmer v. United States,* 10 Cir., 405 F.2d 316. Defendant's motion to suppress was filed in open court on the second day of trial. We find unpersuasive counsel's claim that he had only recently learned the evidence would be used. Thirteen of the 31 counts on which defendant was indicted charged failure to maintain adequate records of controlled substances. It is difficult to accept that defendant was surprised by the use of his office records to support these charges. The motion to suppress was

---

1. The comments complained of were as follows:

 > Mr. Thomas talked to you for twenty minutes. Did he say one word to you about what happened to three hundred thousand drugs? Not one word.
 > He doesn't want you to think about that. He thinks that's the way you are fair, don't mention the fact that the Doctor has some three hundred thousand drugs that he has ordered that he can't account for.

2. Bridwell also claims the jury instruction given on a defendant's right not to testify at trial constituted an impermissible comment on his exercise of that right. The Supreme Court has recently rejected this argument in *Lakeside v.*

*Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319.

3. The government counters that a federal agent, properly designated under 21 U.S.C. § 880(b)(2), accompanied the state agent at all times and this effectively validated the warrant. Because of our resolution of this issue we need not address these opposing arguments.

4. The court stated it would grant a hearing on the motion at a later time. No hearing was ever held, however, apparently because defendant's counsel never reminded the court of its earlier statement.

waived by untimely filing and may not now be asserted on appeal. *See United States v. Wood,* 9 Cir., 550 F.2d 435, 439–40.

The remaining contentions of error are raised by defendant Bridwell jointly with the other defendants. The first claim is that the district court erred in admitting evidence of misconduct under Fed.R.Evid. 404(b). The evidence consisted of testimony by four police officers indicating that defendants Schwab and Boyd had illegally purchased a large amount of drugs from the unindicted co-conspirator in this case. The buy took place after defendant Bridwell was arrested and concededly after the conspiracy charged in this prosecution had terminated. All defendants argue the evidence was highly prejudicial, had minimal probative value, and was unaccompanied by a limiting instruction on its use.[5] Although we believe the volume of testimony admitted on the separate offense approaches the outer limits of permissible use of rule 404(b) evidence, we are not persuaded that reversal is required.

 Our cases have repeatedly held that evidence of other crimes or acts is admissible to prove, among other things, motive, intent, opportunity, and knowledge. *E. g., United States v. Waldron,* 10 Cir., 568 F.2d 185, *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788; *United States v. Nolan,* 10 Cir., 551 F.2d 266, *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191; *United States v. Burkhart,* 10 Cir., 458 F.2d 201. The admission of such evidence is a matter within the trial court's discretion and requires a balancing of the probative value against the prejudicial effect. *See United States v. Nolan, supra,* at 271. The evidence presented here was extremely probative of defendant Schwab and Boyd's motive, intent, knowledge, and plan. The drug purchase occurred soon after the instant conspiracy terminated and involved all the same parties except Bridwell. The proximity in time and similarity in method

made the evidence especially probative, particularly in this, a conspiracy case. *See United States v. Gamble,* 10 Cir., 541 F.2d 873, 878.

 Defendants contend that even if the evidence was properly admitted the court should have given a limiting instruction confining the use of the evidence to proof of motive, etc. We agree that is the preferable procedure. *See Spencer v. Texas,* 385 U.S. 554, 562–63, 87 S.Ct. 648, 17 L.Ed.2d 606. In this case, however, no limiting instruction was ever offered or requested, and no objection on this point was made to the court's final instructions. Defendant's counsel is ordinarily under an obligation to request a cautionary instruction. *Nutt v. United States,* 10 Cir., 335 F.2d 817, 818–19, *cert. denied,* 379 U.S. 909, 85 S.Ct. 203, 13 L.Ed.2d 180; *United States v. Conley,* 8 Cir., 523 F.2d 650, 654 n.7, *cert. denied,* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327; Fed.R.Evid. 105. In the absence of such a request we may reverse only if plain error exists. Fed.R.Crim.P. 52(b). We do not believe the impact of this evidence was so critical that reversal is required.

 Next, defendants Boyd and Bridwell raise a unique issue regarding the authority of the assistant U.S. Attorney to prosecute this case. They claim, with some factual support, that the prosecutor had resigned his office and was called back by the local, acting U.S. Attorney to handle trials on a case-by-case basis. This procedure allegedly conflicts with statutory requirements that assistant U.S. Attorneys be appointed only by the Attorney General. 28 U.S.C. § 542(a). *See also* 28 U.S.C. § 543(a). The district court, after considering briefs, affidavits, and exhibits on this issue, overruled defendants' objection to the status of the prosecutor. The court's order evidences a finding that the prosecutor had not resigned his office, the position emphatically asserted by the government. This finding on a preliminary question of fact

---

**5.** Defendant Boyd also claims she was entrapped and was subjected to an illegal search in this transaction. These claims may be raised on direct appeal from defendant's conviction on this other offense, if any. For purposes of this appeal, we do not believe her claims in any way negate the probative value of this evidence.

should be overturned only if found to be clearly erroneous. *Cf. United States v. Walker,* 10 Cir., 524 F.2d 1125, 1128; *United States v. Miles,* 10 Cir., 449 F.2d 1272, 1274. Although defendants' claim is not without some evidentiary support, the district court finding was not clearly erroneous.

■ Defendants Boyd and Bridwell also complain that the prosecutor delayed producing discoverable material in violation of a pretrial order and Fed.R.Crim.P. 16(a)(1)(C). Certain evidence was disclosed after the date ordered by the court for exchange of discoverable material. The government claims the delay was due to inadvertence and ongoing investigation, a claim which is generally supported by the record. Defendants have made no showing of substantial prejudice from the delay and it therefore appears the district court did not abuse its discretion in admitting the evidence. *See United States v. Coppola,* 10 Cir., 526 F.2d 764, 774–75; *United States v. Dowdy,* 10 Cir., 455 F.2d 1253, 1255–56.

Defendants Schwab and Boyd each devote a substantial portion of their briefs to the claim that there was insufficient evidence to convict them of conspiracy. They argue the government failed to prove the existence of an agreement, an essential element of conspiracy. They rely principally on our decision in *United States v. Butler,* 10 Cir., 494 F.2d 1246, wherein we overturned a number of conspiracy convictions on the basis of insufficient proof of agreement. We stated that in order to be guilty of conspiracy there must be a meeting of the minds on a common design, purpose, or object. Mere knowledge or approval of the object or purpose of the conspiracy is not sufficient. 494 F.2d at 1249. *See Iannelli v. United States,* 420 U.S. 770, 777 n.10, 95 S.Ct. 1284, 43 L.Ed.2d 616. *Butler* does not stand alone, however. Other cases elaborate somewhat on the necessary proof of conspiracy. In *Direct Sales Co. v. United States,* 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674, the Supreme Court pointed out that the essential agreement in a conspiracy need not be formalized.

[I]t can make no difference the agreement was a tacit understanding, created by a long course of conduct and executed in the same way. Not the form or manner in which the understanding is made, but the fact of its existence and the further one of making it effective by overt conduct are the crucial matters. The proof, by the very nature of the crime, must be circumstantial . . . .

319 U.S. at 714, 63 S.Ct. at 1270 (footnotes omitted). *See also United States v. Jackson,* 10 Cir., 482 F.2d 1167, 1173, *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111.

■ We think the evidence of conspiracy in this case was quite sufficient to support the jury verdict. The unindicted co-conspirator testified at trial to seven different illegal drug transactions in which Schwab and Boyd were involved. The *modus operandi* was virtually identical in each one. The agreement which is the essence of conspiracy can easily be inferred from this repeated and uniform course of conduct. *See Direct Sales Co. v. United States, supra,* 319 U.S. at 714, 63 S.Ct. 1265. The indicia of conspiracy in this case are not merely supportive, they are compelling.

Defendants Schwab and Boyd also argue the district court erred in refusing to grant them a severance from the trial of Bridwell. Schwab claims there was a misjoinder of offenses under Fed.R.Crim.P. 8(a) and (b) because the evidence showed not one, but multiple conspiracies. He relies again on our decision in *United States v. Butler,* 10 Cir., 494 F.2d 1246, 1256–57, and on the Supreme Court decision in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. The evidence in *Kotteakos* showed multiple conspiracies connected only by one common conspirator at the center. The conspiracies could be characterized as "spokes of a wheel" in which each conspirator was interested in only his own separate transaction. The Court held it was impermissible to join all the defendants at trial.

■ We believe this case is distinguishable from *Butler* and *Kotteakos.* The evidence at trial clearly indicated that there

was one overall conspiracy to sell drugs illegally. The facts of this case fall within the scope of *Blumenthal v. United States,* 332 U.S. 539, 558, 68 S.Ct. 248, 92 L.Ed. 154, a case which distinguished *Kotteakos* by finding a single, comprehensive plan to sell liquor at illegally high prices. In this case, Boyd and Schwab were involved in a continuous course of conduct over a substantial period of time. The record simply does not support the claim of multiple conspiracies. We think the three defendants were properly joined at trial under rule 8(b).

 Defendants also argue that even if joinder was technically correct, they were prejudiced by it and severance should have been granted under Fed.R.Crim.P. 14. The question of severance is a matter within the sound discretion of the trial judge. *E. g., United States v. Smaldone,* 10 Cir., 485 F.2d 1333, 1345, *cert. denied,* 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286. In order to obtain a severance the defendant must show clear prejudice resulting from joinder at trial. *Id.* We believe defendants have failed in this showing and thus find no basis for reversal.

Although Bridwell was indicted on 31 counts and Boyd and Schwab on only one, the numerical difference is misleading. The quantum of evidence at trial was not weighted overwhelmingly on Bridwell's separate offenses. The fact that 13 of the counts against Bridwell were for failure to maintain records, a more technical offense, made it easier for the jury to compartmentalize that evidence. The final instructions to the jury sufficiently informed them of the necessity of individual consideration for each defendant. In light of the above, we find no abuse of discretion in the district court's refusal to grant a severance.

■ Finally, defendant Boyd raises two issues which can be addressed briefly. It is first argued that the district court erred in refusing to instruct the jury on the need for independent evidence corroborating the testimony of an accomplice or co-conspirator. Although defendant states an instruction on this point was offered and refused, the record does not so indicate. Regardless, the court's instructions were consistent with the law of this circuit.[6] *See United States v. Carpenter,* 10 Cir., 535 F.2d 1218; *Butler v. United States,* 10 Cir., 408 F.2d 1103, 1105.

■ Defendant also contends her sentence was excessive. The record indicates that the district court gave prolonged and thoughtful consideration to the appropriate sentence. The sentence imposed (5 years plus a 2 year special parole term) is within the applicable statutory limits, and under these circumstances, the sentence will not be disturbed on appeal. *See United States v. Waldron,* 10 Cir., 568 F.2d 185, 187.

The judgments of conviction are in all aspects and as to all defendants.

Affirmed.

---

6. The instruction at issue was as follows:

An accomplice:

An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence.

However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care.

You should never convict a defendant upon the unsupported testimony of an accomplice unless you believe the unsupported testimony beyond a reasonable doubt.

Informer:

The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony is the result of sincere conviction or instead has been affected by self-serving interest, or by prejudice against the defendant or defendants.